UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cv-24085-RKA

JOSE HERRERO,

    *Plaintiff,*

v.

SOUTH MIAMI HOSPITAL, INC.
d/b/a, a/k/a SOUTH MIAMI HOSPITAL
HEALTH SOUTH FLORIDA, a Florida
corporation,

    *Defendant.*

_____

**DEFENDANT'S MOTION FOR SUMMARY FINAL JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the Southern District of Florida, Defendant, South Miami Hospital, Inc. ("South Miami Hospital"), respectfully moves for entry of summary final judgment and states the following:

**I.      INTRODUCTION & SUMMARY OF THE CASE[1]**

Plaintiff alleges South Miami Hospital subjected him to unlawful employment discrimination based on his alleged disability and failed to reasonably accommodate him in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117 ("ADA") and the Florida Civil Rights Act of 1992, Fla. Stat. § 7601.01, *et seq*., ("FCRA"). However, the uncontroverted evidence paints a very different picture—one in which no ADA or

---

[1] This represents a distillation of the Statement of Undisputed Material Facts, which are separately being filed in accordance with the Local Rules. Factual references made within this Motion also contain citations to paragraphs contained within the Statement of Undisputed Material Facts, and are labeled, "SMF" with the corresponding paragraph.

FCRA violations occurred—and establishes that South Miami Hospital is entitled to summary final judgment.

Plaintiff was employed as a Surgical House Physician (SHP) at South Miami Hospital, a 24-hour facility with an emergency room that treats patients presenting with myriad acute health conditions. SMF ¶ 6-7; 9-10. As a SHP, Plaintiff had to be available and able to assist with any surgery occurring during his regular or "on call" shift. SMF ¶ 9-10. This included, for example, emergency orthopedic operations on trauma patients who presented with multiple fractures. SMF ¶ 5.

In June 2021, Plaintiff informed South Miami Hospital that he had a hearing impairment and could no longer participate in procedures that involved "loud" noises unless he wore "in the ear and over the ear hearing protection" that would effectively "tune out the noise" in the operating room ("OR"). SMF ¶ 14-17. Hearing protection was not feasible, however, because all surgical staff must be able to listen to and follow the attending surgeon's instructions during surgery; otherwise, patient safety would be compromised. SMF ¶ 17; 20. Excusing Plaintiff from "loud" surgeries altogether was likewise unfeasible because there were a limited number of SHPs onsite during a given shift, and SHPs cannot pick and choose which emergencies they will cover. SMF ¶ 22-27. Because Plaintiff could no longer guarantee his help on various surgeries, South Miami Hospital was placed in an untenable position.

While it was clear Plaintiff was no longer able to deliver on the essential functions of his job, South Miami Hospital did not give up on him. SMF ¶ 27-28. Instead, South Miami Hospital identified several interim assignments and offered them to Plaintiff for the same rate of pay and the same benefits. SMF ¶ 28. Plaintiff declined these opportunities, however, characterizing them as beneath him and "demeaning." SMF ¶ 29. Following Plaintiff's decision to decline assignments

2

that would have allowed him to maintain his pay and benefits, South Miami Hospital placed Plaintiff on a continuous leave of absence. SMF ¶ 30. South Miami Hospital also assigned Plaintiff a Leave and Disability Administration Case Manager to help Plaintiff identify other vacant positions for which he may have qualified. SMF ¶ 30.

On March 17, 2023, after nearly two years on leave, South Miami Hospital finally terminated Plaintiff's employment after South Miami Hospital's reassignment efforts did not yield other positions for which Plaintiff was qualified. SMF ¶ 31-33. By that time, Plaintiff's condition had not improved, and he was still unable to safely do the work of a SHP. SMF ¶ 30-33.

Plaintiff does not know who made the decision to terminate his employment and cannot refute the reasons given for the termination decision. SMF ¶ 31-32; 34. Likewise, Plaintiff has been unable to point to anyone outside his protected class (*i.e.*, those who were *not* disabled) who was treated more favorably. SMF ¶ 37-38.

Given that (a) Plaintiff was not able to perform the essential functions of his job, (b) he is unable to refute the reasons for his termination, and (c) South Miami Hospital went above and beyond any legal requirements to accommodate Plaintiff, summary final judgment is warranted in South Miami Hospital's favor.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). When, as is the case here, the non-moving party bears the burden of proof on an issue, the moving party

need not offer affidavits negating the opponent's claim. *Id.* Instead, the moving party may discharge its burden by showing the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once a movant meets its burden, the non-moving party must "go beyond the pleadings," and by affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific evidence showing there is a "genuine issue for trial." *Id.* at 324. It is the non-moving party's obligation to come forward with *specific facts*, not "mere allegations or denials of his pleadings." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome summary judgment]." *Anderson*, 477 U.S. at 252; *see also*, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987) ("Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer").

### III.   ARGUMENT

#### A.   Plaintiff's Disability Discrimination Claims (Counts I and III) Fail.

In Counts I and III Plaintiff alleges his employment was "wrongfully" terminated because of his disability, in violation of the ADA and the FCRA. *See* Pl.'s Compl. ¶¶ 29, 43. Disability claims under the FCRA and ADA are analyzed under the same framework. *See Sicilia v. United Parcel Serv., Inc.*, 279 F. App'x 936, 938 (11th Cir. 2008) (affirming summary judgment in favor of the employer on the employee's FCRA and ADA claims). Therefore, Counts I and III, which are predicated on the same operative facts and subject to the same analytical framework, are addressed jointly.

**1. The McDonnell Douglas Burden Shifting Framework Applies.**

Absent direct evidence of discriminatory intent,[2] Plaintiff must prove his case through circumstantial evidence by applying the *McDonnell Douglas* burden shifting framework. *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007), *citing Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000); *see also McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). Under that paradigm, a plaintiff must first establish a *prima facie* case of unlawful employment discrimination. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2002).

To establish a *prima facie* case of disability discrimination, Plaintiff must establish: (1) he was disabled;[3] (2) he was a "qualified individual;" (3) he was subjected to an adverse employment action; and (4) the employer took that action "because of" the plaintiff's disability. *Leme v. So. Baptist Hosp. of Fla., Inc.*, 248 F. Supp. 3d 1319, 1337-38 (M.D. Fla. 2017). A plaintiff must prove each of these elements by a preponderance of the evidence to survive summary judgment. *Hilburn v. Maruta Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999).

---

[2] "Direct evidence is that which shows an employer's discriminatory intent 'without any inference or presumption.'" *Leme v. So. Baptist Hosp. of Fla., Inc.*, 248 F. Supp. 3d 1319, 1338 (M.D. Fla. 2017), *citing Hinson v. Clinch Cnty., Ga. Bd. of Educ.* 231 F.3d 821 827 (11th Cir. 2000); *see also Roberts v. Design & Mfg. Servs., Inc.*, 167 F. App'x 82, 84-85 (11th Cir. 2006) ("Direct evidence of… disability-based discrimination is evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption… Evidence that only suggests discrimination, … or that is subject to more than one interpretation, … does not constitute direct evidence.'")(internal quotations omitted). This is not a case of direct evidence as Plaintiff has failed to proffer evidence by the close of discovery, such as discriminatory comments, that would conclusively prove discriminatory intent without inference or presumption. *Roberts*, 167 F. App'x at 84-85.

[3] For purposes of this Motion, South Miami Hospital does not dispute that Plaintiff is disabled under the ADA or the FCRA.

If Plaintiff meets his *prima facie* burden, the burden shifts back to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment decision. *Wascura*, 257 F.3d at 1242, *citing Chapman v. Al. Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000). The employer's burden is "merely one of production," and "it need not persuade the court that it was actually motivated by the proffered reasons." *Chapman,* 229 F.3d at 1024.

Once the employer meets its burden, any presumption of discrimination is eliminated from the case. *Id.* And to survive summary judgment, the plaintiff must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were pretextual—that is, (1) the reasons were false, *and* (2) "discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2752 (1993). Failure to establish both points mandates summary judgment in the employer's favor. *Id*.

**2. Plaintiff Was Not Qualified for His Job.**

Plaintiff's disability discrimination claims fail at the most basic level because he was not a "qualified individual." *Leme*, 248 F. Supp. 3d at 1337-38.

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1267–68 (11th Cir. 2014). Essential functions are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). In determining whether a function is essential, "consideration shall be given to the employer's judgment ... and if an employer has prepared a written description ... for the job, this description shall be considered evidence of the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997) (holding same). A "job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed."

6

*Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir.2000).

The uncontroverted evidence shows Plaintiff was not a "qualified individual" because he could not perform the essential functions of his job, with or without an accommodation. *Mazzeo*, 746 F.3d at 1267–68. SHPs serve as "first assistant[s] to the attending surgeon" and are "assigned to cover surgeries based on the needs of the hospital and of the patients on any given day." SMF ¶ 7, 9. They must be "on call" to assist on multiple surgical specialties, many of which may involve the use of noisy surgical instruments. SMF ¶ 10; 37. And they must have unobstructed hearing during surgical procedures to ensure clear communication among the surgical team. SMF ¶ 12-13. To that end, the job description states that SHPs must be able "to distinguish between different tones in person and through electronic devices, and [to] understand meanings of words associated with them." SMF ¶ 12. Plaintiff admits these were all requirements of his job. SMF ¶ 12.

It is also essential that SHPs assist with *any* emergencies that occur during their regular and "on call" shifts.

> Q. …So if there's an emergency and somebody comes into the hospital that require[s] emergency surgery, a surgical house physician… will be assigned to help with that particular surgery?
>
> A. Yes. Depend [*sic*] on the hour of the day, but even after hours somebody on call have to take it and be ready within 30 minutes at the hospital.
>
> …
>
> Q. …And when you are on call you are on call for any type of surgery that might be needed?
>
> A. Yes.
>
> Q. And that is precisely to account for those types of unexpected emergencies that might come up?
>
> A. Yes.

7

SMF ¶ 10.

Plaintiff could not perform these essential job functions because he was restricted from exposure to "loud" noises that prevented him from covering a range of potential surgeries, including the more than 1,000 orthopedic surgeries and 2,500 general surgeries the hospital performs any given year. SMF ¶ 24-25. Moreover, there were a limited number of employees capable of performing the work of a SHP. SMF ¶ 7. *See Earl*, 207 F.3d at 1365. Indeed, a person filling in for Plaintiff would have to hold a degree as a medical doctor, or its equivalent, from another country and be able to serve as a "first assistant" to the attending physician on duty. SMF ¶ 7. During any given shift, there were only 6-8 employees who met those criteria at the hospital. SMF ¶ 23. It was therefore critical that Plaintiff be able to cover a variety of operations during his scheduled and "on call" shifts. SMF ¶ 27.

Because Plaintiff was not able to meet these essential job functions, he was not a "qualified individual," and he cannot meet his *prima facie* burden for his employment discrimination claims. *Wascura*, 257 F.3d at 1242. Summary final judgment is therefore warranted in favor of South Miami Hospital on Counts I and III. *Id*.

### 2. Plaintiff Cannot Adduce Evidence of Disparate Treatment.

Since Plaintiff was not a "qualified individual," the inquiry ends there, and South Miami Hospital should be entitled to judgment as a matter of law. Even if Plaintiff was qualified, however, his disparate-treatment claims would still fail because he cannot proffer evidence that similarly situated individuals outside his protected class—*i.e.*, those who were not disabled—were treated more favorably. *Willis v. Walmart Associates, Inc.*, 592 F. Supp. 3d 1203, 1245 (S.D. Fla. 2022) (ALTMAN, J.) (granting summary judgment in the employer's favor where the employee failed to identify "a *single* similarly-situated comparator") (emphasis in original).

"[A] comparator must be 'similarly situated in all material respects,' meaning that the plaintiff and comparators are 'sufficiently similar, in an objective sense, that they cannot reasonably be distinguished.'" *Id.* at 1246 (quoting *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021)). A similarly-situated comparator "will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment history." *Id.* These considerations "leave[] employers the necessary breathing space to make appropriate business judgments." *Id.* (quoting *Lewis v. City of Union City*, 918 F.3d 1213, 1244 (11th Cir. 2019)).

Here, Plaintiff has offered no evidence showing that non-disabled SHPs were treated more favorably by being allowed to tune out the noise in the OR or by not being required to ever perform surgeries that involved loud noises. To the contrary, the uncontroverted evidence shows that every SHP needed to be able to cover emergency surgeries on an as-needed basis, and that from 2020 to the present, every SHP has had to perform the type of surgeries Plaintiff stated he could not perform. SMF ¶ 37-38. It is also undisputed that all SHPs were required to have unobstructed hearing and that no SHP—disabled or not—was allowed to tune out any noise in the OR using "in the ear and over the ear hearing protection" or otherwise. SMF ¶ 37-38. Plaintiff's inability to show disparate treatment is fatal to his claims. *Willis*, 592 F. Supp. 3d at 1245.

### 3. Plaintiff Cannot Present Evidence of Pretext.

Even if Plaintiff were able to meet his *prima facie* burden, summary final judgment in South Miami Hospital's favor would still be appropriate because Plaintiff cannot demonstrate the reason for any adverse employment action was pretextual. *Palmer v. Albertson's LLC*, 418 F. App'x 885, 888 (11th Cir. 2011).

Here, South Miami Hospital had legitimate reasons for its employment decision. Plaintiff was unable to perform the essential functions of his job as a SHP because his proposed accommodations would have jeopardized patient safety. SMF ¶ 20; 32. When South Miami Hospital offered Plaintiff interim assignments that would have allowed him to maintain his same pay and benefits, Plaintiff declined those opportunities, leaving South Miami Hospital with no choice but to place Plaintiff on an indefinite leave of absence while the hospital tried to find other positions for which he was qualified. SMF ¶ 30.

After nearly two years on leave, termination followed since Plaintiff was still unable to return to work or find another position for which he was qualified. SMF ¶ 33. This is a plainly legitimate business reason to terminate an employee's employment. *See, e.g., Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 945 (N.D. Ga. 1995) (employee was separated after she failed to return to work after an extended leave of absence; summary judgment was likewise warranted in the employer's favor on her ADA claims); *Jerome v. Barcelo Crestline, Inc.*, No. 1:07-CV-0447-WSD-LTW, 2009 WL 10657257, *3 (N.D. Ga. May 12, 2009) (termination for inability/failure to return from a nearly two-year leave was legitimate and non-discriminatory). South Miami Hospital's "exceedingly light" burden to produce a legitimate non-discriminatory reason has, therefore, been met. *Chapman,* 229 F.3d at 1024.

To survive summary judgment, Plaintiff must prove South Miami Hospital's proffered reasons are pretextual. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). To do this, he must set forth evidence that reveals "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that no reasonable factfinder could find them worthy of credence." *Id*. In attempting to accomplish this, "plaintiff cannot substitute [his] own business judgment or simply quarrel with the wisdom

10

of the proffered reason." *Jenks v. Naples Community Hosp., Inc.*, 829 F. Supp. 2d 1235, 1251 (M.D. Fla. 2011). In sum, Plaintiff's evidence of pretext *must prove*: (1) the proffered reason is false; *and* (2) discrimination was the real reason behind the termination decision. *Hicks*, 113 S. Ct. at 2752.

Here, Plaintiff has failed to proffer any evidence showing that discrimination was the real reason behind South Miami Hospital's employment decisions. At his deposition, Plaintiff admitted he does not know who made the relevant employment decision. SMF ¶ 34. And if Plaintiff does not know the decision makers, logic dictates he cannot speak to their motivations or prove whether those motivations were, indeed, discriminatory.[4] *Hicks*, 113 S. Ct. at 2752. Moreover, Plaintiff admits that South Miami Hospital had a long history of employing and accommodating disabled employees, further demonstrating that South Miami Hospital harbored no discriminatory intent toward disabled employees and that its decisions concerning Plaintiff were not mere pretext for discrimination. SMF ¶ 39.

For these reasons, summary final judgment is appropriate as to Counts I and III of the Complaint.

**B.     Plaintiff's Failure-to-Accommodate Claims (Counts II and IV) Fail.**

To prevail on a failure-to-accommodate claim under the FCRA or ADA, Plaintiff must prove by a preponderance of the evidence that (1) he was a qualified individual with a disability; (2) he made a specific request for a *reasonable* accommodation; and (3) the employer failed to provide a reasonable accommodation or engage in the requisite interactive process to identify a reasonable accommodation. *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020) (affirming summary judgment in employer's favor where a deaf employee failed to

---

[4] Pl. Dep. ¶ 89:15-18.

demonstrate that the accommodation offered by his employer was not reasonable); *Palmer v. McDonald*, 824 F. App'x 967, 979 (11th Cir. 2020) (affirming summary judgment in favor of employer where the employee "advanced no evidence establishing that [the employer] failed to accommodate his disability.").

As explained above, Plaintiff is not a qualified individual with a disability because he is unable to perform the essential functions of his job, with or without an accommodation. *Mazzeo*, 746 F.3d at 1267–68. But even if Plaintiff were a qualified individual, his failure-to-accommodate claims would still fail because South Miami Hospital did not deny him a *reasonable* accommodation, nor did South Miami Hospital fail to engage in the interactive process.

"An accommodation qualifies as 'reasonable,' … **only if** it enables the employee to perform the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001) (emphasis added), *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997) ("The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions."); *Morgan v. GEO Group, Inc.*, No. 18-CIV-62774-ALTMAN, 2020 WL 948466, *13 (S.D. Fla. Feb. 5, 2020) (noting that a "reasonable accommodation is meant to allow an employee to perform the essential functions of his position.") (internal quotations omitted). "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of [his] job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable" *Scott v. Postmaster Gen. U.S. Postal Serv.*, No. 19-12924, at *6-7 (11th Cir. June 18, 2020).

In this case, Plaintiff's accommodation request would have required South Miami Hospital to eliminate essential job functions from his role, which the law does not require. *Lucas*, 257 F.3d

at 1255-56.  Specifically, Plaintiff requested to limit his assignments to a subset of surgeries, to avoid orthopedic and podiatry surgeries, and to otherwise avoid loud noise in operating rooms. SMF ¶ 36.  Plaintiff was also unwilling to compromise on his request, further illustrating the lack of "reasonableness:"

> The accommodation that I *should* be given was to assign me to the OB department or to assign me to doing history and physical examination or assign me in the OR with the exception of the case or restriction to assign me in case that using [sic] tool to cut bone but make noise.

SMF ¶ 36.

As already explained, work in "loud" surgeries was essential to a SHP's job; thus, eliminating that function would not have been reasonable.  SMF ¶ 23; 25; 27; 32; *see Lucas*, 257 F.3d at 1255-56; *see also Rodda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1297 (S.D. Fla. 2021) (employee failed to demonstrate that her chosen accommodation was reasonable because she failed to show it would have allowed her to perform the essential functions of her job).  In essence, Plaintiff wanted a permanent light-duty position, which South Miami Hospital was not required to provide. *See*, *e.g.*, *Frazier-White v. Gee*, 818 F.3d 1249, 1256 (11th Cir. 2016) ("Defendant was not required by the ADA to create a permanent light-duty position especially for Plaintiff.").

Moreover, South Miami Hospital could not allow Plaintiff to use "in the ear and over the ear hearing protection" and tune out all noise in the OR because doing so would compromise patient safety.  SMF ¶ 17; 20.  An accommodation that jeopardizes health and safety in a medical setting is *not* reasonable.  *Leme v. So. Baptist Hosp. of Fla., Inc.*, 248 F. Supp. 3d 1319, 1337-38 (M.D. Fla. 2017) (an accommodation proposed by an employee was not reasonable where it could not "ensure patient safety" or where patient safety would otherwise be "jeopardized").  Indeed, "courts throughout the Eleventh Circuit have routinely deemed accommodations *unreasonable*

13

where the accommodation did not enable employees in the medical field to perform the essential functions of their jobs *and ensure patient safety*." *Id.* (emphasis added), *see also U.S. Equal Emp't Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, No. 8:13-CIV-2723-T-30TGW, 2015 685766, *1 (M.D. Fla. Feb. 18, 2015) (a nurse's use of a cane in an in-patient psychiatric unit of a hospital was not a reasonable accommodation because it jeopardized her safety and the safety of the other patients and employees). For this same reason, the use of hearing aids by a medical employee with a "severe to profound… loss of hearing in each ear" was not a reasonable accommodation because the employee would not have been able to consistently react to emergency communications. *Collis v. Gwinnett Cnty, Ga.*, 156 F. Supp. 2d 1342, 1349 (N.D. Ga. 2001). That was the precise situation South Miami Hospital faced with Plaintiff. SMF ¶ 17; 20.

    Even though no reasonable accommodation was available, South Miami Hospital continued to engage in the interactive process with Plaintiff. SMF ¶ 30-33. Specifically, it offered Plaintiff reassignment to other vacant positions for the same pay and same benefits. SMF ¶ 31-33; *See Mattingly v. Univ. of S. Fla. Bd. of Trs.*, 931 F. Supp. 2d 1176, 1185 (M.D. Fla. 2013) (reassignment is "one in a range of reasonable accommodations which must be considered). But Plaintiff declined these opportunities, characterizing them as "demeaning." SMF ¶ 29. Plaintiff wanted to simply continue in his prior role but limit his assignments and surgeries, effectively creating a new position for himself; but South Miami Hospital was not required to promote Plaintiff, reassign him to an occupied position, or create a new position for him. *Ivey v. First Quality Retail Services*, No. 5:09-CIV-333 (MTT), 2011 WL 1671927, *10 (M.D. Ga. May 3, 2011). Plaintiff also made no effort to identify other vacant positions for which he was qualified, notwithstanding the law's requirement that he do so. *See Hawthorne v. City of Prattville*, No. 2:19-CIV-139-RAH (WO), 2020 WL 5880135 (M.D. Ala. Oct. 2, 2020) (employee "must make

an effort to identify the vacant position for which he is qualified."), *citing Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir. 1996).

Still, South Miami Hospital did not give up on Plaintiff.  Instead, it placed Plaintiff on an indefinite leave of absence so that Plaintiff and South Miami Hospital could continue to search for other positions within South Miami Hospital and its sister facilities for which Plaintiff may have been qualified.  SMF ¶ 30-33. This indefinite leave of absence was more than the law required of South Miami Hospital. *See Smith v. Sturgill,* 516 F. App'x 775, 776 (11th Cir.2013) (an employer is not required to allow an employee to take an indefinite leave of absence).

During his leave, Leave and Disability Administration Case Manager Nicolas Agresti identified five positions within the OR at sister facilities for which Plaintiff may have qualified, but upon further inquiry, none of those positions could guarantee that Plaintiff would not be exposed to loud noises. SMF 31-32.  Plaintiff likewise failed to identify any opportunities for which he was qualified, and it became apparent he was unwilling to consider any roles outside the OR.  SMF 28-29; 31-32.

South Miami Hospital ended its employment relationship with Plaintiff after spending nearly two years with a dedicated case manager helping Plaintiff find other positions.  SMF 33. The leave of absence and reassignment period South Miami Hospital granted went beyond the law's requirements, and the uncontroverted record shows South Miami Hospital is entitled to judgment as a matter of law as to Counts II and IV of the Complaint. *Smith,* 516 F. App'x at 776.

IV.   **CONCLUSION**

South Miami Hospital is entitled to summary final judgment on all claims.

WHEREFORE, South Miami Hospital respectfully asks this Honorable Court enter an Order: (i) granting its Motion for Summary Final Judgment; (ii) entering final judgment in favor

of South Miami Hospital; (iii) dismissing Plaintiff's claims, with prejudice; and (iv) awarding such other relief as the Court deems just and proper.

Dated this 16th day of August 2023, in Miami, Florida.

                Respectfully submitted,

                By: */s/ Rocio Blanco Garcia*
                Patrick G. DeBlasio, III
                Florida Bar No. 871737
                E-Mail: pdeblasio@littler.com
                Rocio Blanco Garcia
                Florida Bar No. 099304
                E-Mail: rblancogarcia@littler.com
                LITTLER MENDELSON, P.C.
                Wells Fargo Center
                333 SE 2nd Avenue, Suite 2700
                Miami, FL 33131
                Telephone: (305) 400-7500
                Facsimile: (305) 603-2552

                *COUNSEL FOR DEFENDANT*

4860-8503-7685.6 / 071336-1017